LAURA J. FOWLER, Bar No. 186097
laura.fowler@bbklaw.com
ASHLEY E. RATLIFF, Bar No. 299090
ashley.ratliff@bbklaw.com
Best Best & Krieger LLP
500 Capitol Mall, Suite 1700
Sacramento, CA  95814
Telephone:  (916) 325-4000
Facsimile:  (916) 325-4010

Attorneys for Plaintiff
DealerX

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEALERX, a New Jersey corporation,<br><br>   Plaintiff,<br><br>v.<br><br>GURRI KAHLON, an individual,<br><br>   Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>(1) Trademark Infringement (15 U.S.C. § 1114(1);<br>(2) False Advertising (15 U.S.C. § 1125(a));<br>(3) Common Law Trademark Infringement; and<br>(4) Cyberpiracy; |

# COMPLAINT

Plaintiff DealerX ("Plaintiff" or "DealerX") for its claims against Defendant Gurri Kahlon ("Defendant" or "Kahlon"), alleges as follows:

## SUBSTANCE OF THE ACTION

1. DealerX files this lawsuit for trademark infringement, false advertising, and domain name cyberpiracy under 15 U.S.C. §§ 1114 and 1125(a) and (d), and common law trademark infringement, based on Defendant's use of the domain name *roiq.com* to advertise a sham business invented by Defendant in order to defraud DealerX, the public, and the courts.

2. As explained in greater detail below, ROIQ® is a registered trademark that is exclusively registered to DealerX in the United States. In 2016, having obtained a federal registration for ROIQ and developed a thriving and successful business around the brand and, at the same time, having observed that the static and undeveloped website to which *roiq.com* resolved had gone unchanged for extended periods of time, a DealerX representative contacted Defendant, who, after eliciting specific information regarding the nature of DealerX's business, immediately thereafter erected a website advertising exactly the same online customer relations management ("CRM") and digital marketing services as DealerX offers. Kahlon deliberately designed his website to convey the false impression that Kahlon had previously been using ROIQ in that connection. For example, despite the fact that Kahlon has no customers, had not used the website since early 2011, and has never operated a viable business, Kahlon included text stating, "Existing Customers can continue to login to the system using their current credentials."

3. Kahlon's motivation in erecting this fraudulent webpage was immediately evident, as he subsequently refused to take down his blatantly infringing and fraudulent webpage and dramatically increased his asking price for *roiq.com*.

4. The harm to DealerX from Kahlon's fraudulent and infringing webpage is immediately evident, as DealerX uses the similar domain name of *ro.iq* to host its official website, actually does offer the advertised services, and actually does have existing customers that login to DealerX's systems. DealerX's customers and potential customers reaching *roiq.com*

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CA 95814

have been and will continue to be confused by Kahlon's infringing and fraudulent website, and will believe in error that DealerX has shut down and is "preparing for a re-launch soon."

5. When Kahlon continued to display his infringing and fraudulent website, on March 9, 2017, DealerX initiated an administrative proceeding pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP"), Case No. 2017-0488. The panelist appointed to decide the dispute entered a decision on May 4, 2017, finding that DealerX had not sustained its burden to show Kahlon's bad faith at the time that Kahlon registered the domain name and that Kahlon's use of the domain name was in bad faith—required elements of the complainant's case under the UDRP but not required elements of the claims pleaded here. A copy of the panelist's decision is attached as Exhibit A. Entry of such a decision does not prevent either party from submitting the dispute to a court of competent jurisdiction, such as this Court, for independent determination. *See, e.g., Parisi v. Netlearning, Inc.,* 139 F. Supp. 745, 751 (E.D. Va. 2001) (recognizing nothing "in the UDRP restrains either party from filing suit before, after, or during the administrative proceedings" and noting "UDRP itself calls for comprehensive, *de novo* adjudication of the disputants' rights").

6. Prior to the parties' receipt of the UDRP panelist's decision, DealerX provided Kahlon with a draft copy of this Complaint and advised him that because injunctive relief and other relief required to protect DealerX and the public from Kahlon's fraud and infringement were not available in that forum, and because DealerX is suffering irreparable harm from Kahlon's fraud and infringement, DealerX intended to file this suit against Kahlon in U.S. federal court.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to:

(a) The International Convention for the Protection of Industrial Property, 13 U.S. Treaties and Other International Agreements (1962), implemented by Sections 39 and 44 of the Lanham Act, 15 U.S.C. §§ 1121 and 1126, and by the Judicial Code, 28 U.S.C. § 1331;

(b) Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c) Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services;

(d) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), relating to false advertising;

(e) Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), relating to domain name cyberpiracy; and

(f) The Judicial Code, 28 U.S.C. § 1367, relating to supplemental jurisdiction over other claims in the action that are so related to claims in the action that they form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendant because Defendant resides in this judicial district and this action arises out of wrongful acts committed by Defendant in this judicial district.

9. Venue is proper under 28 U.S.C. § 1391 because Defendant resides in this judicial district and a substantial part of the events giving rise to these claims occurred in this judicial district.

### THE PARTIES

10. Plaintiff DealerX is a New Jersey corporation with its principal place of business located in Edgewater, New Jersey.

11. Defendant Gurri Kahlon is an individual residing at 10443 Muir Woods Avenue, Stockton, California 95209.

///

## FACTS COMMON TO ALL CLAIMS

(DealerX's Registered ROIQ Trademark)

12. DealerX was founded in 2002 and currently specializes in digital marketing for automobile dealers. Among other things, DealerX has developed a patented group of software programs that enables automotive dealers to maximize their online advertising dollars by strategically identifying and targeting ready-to-buy consumers. DealerX's clients include large, multi-national media companies, original equipment manufacturers, and several of the nation's top automotive dealer groups.

13. ROIQ® is the name of DealerX's patent-pending analytics and attribution program that enables dealerships to determine with certainty which digital advertising contributed to each car sold, identifying, for each purchaser, the specific websites the purchaser visited before and after visiting the dealer's website, any ads the purchaser clicked on to reach the dealer's website, and how much the dealer spent to convert the consumer for sale.

14. DealerX began using ROIQ® in interstate commerce in 2007 and obtained a U.S. registration for ROIQ® (Reg. No. 4,648,717) on December 2, 2014. A copy of its registration certificate is attached as Exhibit A.

15. The registration for such mark is valid, unrevoked, and subsisting, and constitutes *prima facie* evidence of DealerX's exclusive ownership of ROIQ as used in connection with business monitoring and consulting services. In addition, DealerX claims common law trademark rights in ROIQ.

16. DealerX has continuously used ROIQ in connection with the promotion, advertisement, and sale of business monitoring and consulting services and related services since well before the acts of Defendant complained of herein.

17. Defendant has no affiliation or connection with DealerX whatsoever and has not been authorized by DealerX to use ROIQ.

/ / /

LAW OFFICES OF
BEST BEST & KRIEGER LLP
500 CAPITOL MALL, SUITE 1700
SACRAMENTO, CA 95814

**DEFENDANT'S UNLAWFUL CONDUCT**

18. Having observed that the domain name *roiq.com* was registered, but being used only to display a static website that appeared obsolete and had gone virtually unchanged for an extended period of time, Jeffrey Tognetti, Product Development Lead, DealerX, contacted Kahlon in early 2016 to see if Kahlon would be willing to sell *roiq.com* to DealerX.

19. In fact, Kahlon had erected the website to which *roiq.com* then resolved sometime in 2010 and made extremely minimal changes until after he was contacted by Dealer X. That website advertised a service that Kahlon described on the website as providing all of the functions necessary to run an online business, including website creation and hosting, credit card processing, shipping, and customer service. In fact, Kahlon did not provide any of the services he advertised.

20. Kahlon had acquired the domain name from a prior registrant sometime in 2009. In the UDRP proceeding, Kahlon admitted that while he had planned to operate a business related to the domain name, he had never done so. Initially, Kahlon posted a video of himself on *roiq.com* in which he purports to be a wildly successful entrepreneur and to have successfully enabled many businesses "with the help of ROIQ" to replicate his outstanding success. He brags about having his own warehouse and call center and to have formed an "ROIQ staff" by building "an expert team of closers," boasting that he "grew this thing and never looked back" and now "limited his client intake." None of this was even remotely true. In fact, according to evidentiary submissions made by Kahlon in the UDRP proceeding, at most, Kahlon's total revenues related to *roiq.com* were less than $500, consisting at most of a $348 sale in December 2010 and a $99 sale in February 2011, with no sales thereafter. Kahlon further admitted that he "did not have enough funds to keep the page operational" and closed the business for a number of years and that he "had to take my business down but have since planned to re-launch it."

21. On information and belief, after receiving a draft copy of this Complaint, Kahlon contacted third-party websites on which archival copies of his website were saved and secured the destruction of such evidence.

22. On February 6, 2016, Jeffrey Tognetti sent an email to Kahlon, stating that DealerX would be interested in buying the domain name and asking if Kahlon would be interested in selling.

23. On February 7, 2016, Kahlon replied, stating, "As you know It's [sic] a four letter premium domain; *at present, I am in the process of building a business around it* but I will consider a reasonable offer" (emphasis added).

24. Kahlon also asked Mr. Tognetti why he wanted the domain name. In response, Mr. Tognetti explained that Dealer had registered ROIQ® in connection with its digital marketing analytics and attribution program and offered to pay Kahlon $5,000. Kahlon declined, stating as follows:

> "Hi Jeff, I appreciate the offer but I'll have to decline. The fair market value for this domain is around 25k. I have recently declined an offer for 20k from another digital marketing company….it seems that your industry is in the uprise which is why I'm in talks of partnering with an established marketing firm to launch a ROIQ.com. Thanks and Happy Venture!"

25. Mr. Tognetti then sent an email to Kahlon, asking if he would accept $25,000 if DealerX was willing to offer that amount, as well as an email with a link to a website evincing DealerX's federal registration for ROIQ®. Kahlon replied less than 10 minutes later, stating:

> "My attorneys have noted that this won't hold us back Jeff, ROIQ.com can be proven as an operational business since I acquired it in 2008/09 so this TM won't hold up in court if it ever gets to that. Anyhow, I would let go for 35k plus 100k in marketing services from your company. Thanks, Gurri"

*Id*. Mr. Tognetti replied, stating that $135,000 was exorbitant and explaining, among other things, that DealerX has used ROIQ prior to 2008-09. Mr. Tognetti also observed that Kahlon had acknowledged that he had not yet used ROIQ in commerce by stating that he was "looking to partner with an established media firm *to launch* a RoiQ.com." *Id.* (emphasis added). Kahlon then sent an email claiming that he had used ROIQ shortly after acquisition of the domain name and that he was "currently in talks with a digital marketing firm to partner and launch a new version of the ROIQ product with them." *Id.*

1  Immediately thereafter, Kahlon replaced his former website with the current website,
2  stating that ROIQ "is preparing for a re-launch soon," as shown below:

> "ROiQ Returning Soon.  We'll be right back!  ROiQ is preparing for a re-launch soon.  We'll return with an improved CRM and Digital Marketing Platform.  Existing Customers can continue to login to the system using their current credentials.  If you have questions about ROiQ, please contact: G5.Kahlon@icloud.com"

26. As Kahlon later acknowledged in the UDRP proceeding, he was not operating a business and had stopped trying to operate a business related to the domain name in 2010 or 2011.

27. The above-described false statements were material to DealerX's purchasing decision, and Kahlon made the false statements to Mr. Tognetti knowing that they were false and intending that Mr. Tognetti would rely on them.

**FIRST CLAIM FOR RELIEF**

(Trademark Infringement, 15 U.S.C. § 1114(1))

28. The allegations set forth above are incorporated herein by this reference.

29. ROIQ® is a registered trademark and has been used in commerce by DealerX continuously since at least as early as 2009.

30. Defendant has, without DealerX's consent, used and is using in commerce reproductions, counterfeits, copies, or colorable imitations of ROIQ®.  Defendant's actions are likely to cause and have actually caused confusion, mistake, or deception in violation of 15 U.S.C. § 1114(1).

31. By committing the acts alleged herein, Defendant has intentionally, knowingly, and willfully infringed DealerX's ROIQ® mark.

32. Because of Defendant's infringement, DealerX has been irreparably harmed in its business.  Moreover, DealerX will continue to suffer irreparable harm unless Defendant is restrained from infringing DealerX's ROIQ® mark.

33. As a consequence of Defendants' infringement, DealerX has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

(False Advertising under 15 U.S.C. § 1125(a))

34. DealerX realleges and incorporates herein by reference the allegations above.

35. By using *roiq.com* to broadcast false and misleading statements designed to deceive DealerX, this Court, the UDRP panel, and members of the public, Defendant has engaged in false advertisement in violation of 15 U.S.C. § 1125(a).

36. Because of Defendant's conduct, DealerX has been irreparably harmed in its business. Moreover, DealerX will continue to suffer irreparable harm unless Kahlon is restrained from such unlawful conduct as set forth above.

37. As a consequence of Defendant's false advertising, DealerX has suffered damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

(Common Law Trademark Infringement)

38. The allegations set forth above are incorporated herein by this reference.

39. DealerX used ROIQ® in connection with DealerX's services in U.S. commerce before Defendant's registration of *roiq.com* and before any use of ROIQ by Defendant. As a result of the continued sale by DealerX of products and services under ROIQ® and as a result of the experience, care, and service of DealerX in providing DealerX's products and services, ROIQ® has acquired a reputation for excellence and has become associated exclusively with DealerX's products and services.

40. Defendant, with intentional disregard for DealerX's rights, uses ROIQ® in his advertising, business name, and domain name. Such acts are likely to cause, and have caused and will continue to cause, confusion as to the source or sponsorship of Defendant's advertisements, products, and services.

41. Defendant's acts constitute willful infringement of DealerX's exclusive rights in ROIQ®, in violation of the common law.

42. By reason of Defendant's actions, DealerX has suffered irreparable harm. Unless Defendant is restrained from further infringement of ROIQ®, DealerX will continue to suffer irreparable harm.

43. DealerX has no remedy at law that will adequately compensate for the irreparable harm it will suffer if Defendant's conduct is allowed to continue.

44. As a consequence of Defendants' actions, DealerX has suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

### (Cyberpiracy)

45. The allegations set forth above are incorporated herein by this reference.

46. Defendant acquired *roiq.com* (the "Infringing Domain Name") from a prior registrant sometime in 2009.

47. The Infringing Domain Name consists of DealerX's registered ROIQ® trademark.

48. The Infringing Domain Name is being used by Defendant to host a website advertising a non-existent business that purports to offer services for sale in direct competition with DealerX and that blatantly infringes DealerX's registered trademark rights in ROIQ®.

49. Defendant intended in bad faith to profit from the use of ROIQ® in a domain name.

50. Defendant has registered, trafficked in, and used a domain name that incorporates a trademark that is identical to and dilutive of ROIQ®.

51. DealerX is entitled to an injunction transferring the Infringing Domain Names to DealerX.

52. In addition, DealerX is entitled to damages and its costs and attorney's fees. DealerX is entitled to actual damages as well as statutory damages in the amount of $100,000.00 pursuant to 15 U.S.C. § 1117(d).

53. In addition, DealerX is entitled to equitable restitution in an amount to be determined at trial.

WHEREFORE, DealerX prays for judgment against Defendant as follows:

A. That Defendant, and all of his agents, servants, employees, and attorneys, and all other persons in active concert or participation with him who receive actual notice of the injunction, be temporarily, preliminarily, and permanently enjoined from, without permission from DealerX:

  (1) using ROIQ, any colorable imitations thereof, or any marks confusingly similar thereto, other than non-prominently, in purely informational statements;

  (2) transferring to anyone other than to DealerX the domain name *roiq.com* or any other domain name that uses names, words, designations, or other symbols confusingly similar to ROIQ;

  (3) registering, maintaining registrations for, using, offering for sale, claiming ownership of, or in any other way using *roiq.com*, or any other domain name that uses names, words, designations, or other symbols confusingly similar to ROIQ; and

  (4) otherwise deceptively or unfairly competing with DealerX;

B. That Defendant be ordered to disclose to the Court and to DealerX all other domain name registrations owned or controlled by Defendant through any domain name registrar or registry in order to permit the Court and DealerX to consider whether any such other registrations should be transferred to DealerX or be subject to other relief in this matter;

C. That Defendant be ordered to transfer to DealerX his registration for *roiq.com*, and any other domain name that uses names, words, designations, or other symbols confusingly similar to ROIQ;

D. That Defendant be ordered to deliver to DealerX for destruction all signs, business cards, advertising materials, or products that bear ROIQ or that bear marks confusingly similar to ROIQ, or that result in any unfair competition by Defendants against DealerX;

E. That DealerX be awarded damages, and also punitive damages, for Defendant's oppressive, fraudulent, and malicious acts of trademark infringement, false advertising, and cyberpiracy;

F.  That DealerX be awarded its reasonable attorney's fees and costs of suit under 15 U.S.C. § 1117(a);

G.  That DealerX be awarded be awarded statutory damages in the amount of $100,000 pursuant to 15 U.S.C. § 1117(d); and

H.  That DealerX be awarded such other relief as the Court may deem just and proper.

Dated:  July 12, 2017                BEST BEST & KRIEGER LLP


By: */S/ Laura J. Fowler*
   LAURA J. FOWLER
   Attorneys for Plaintiff
   DealerX

# EXHIBIT A

83213.00001\29926616.1 COMPLAINT



ARBITRATION AND MEDIATION CENTER

WIPO
WORLD INTELLECTUAL PROPERTY ORGANIZATION

# ADMINISTRATIVE PANEL DECISION
DealerX v. Gurri Kahlon, ROiQ.com
Case No. D2017-0488

## 1. The Parties

Complainant is DealerX of Edgewater, New Jersey, United States of America ("United States"), represented by Phillips Ryther & Winchester, United States.

Respondent is Gurri Kahlon, ROiQ.com of Plano, Texas, United States, represented by Phillip Thomas Horton, United States.

## 2. The Domain Name and Registrar

The disputed domain name <roiq.com> is registered with GoDaddy.com, LLC (the "Registrar").

## 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on March 9, 2017. On March 9, 2017, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name.  On March 9, 2017, the Registrar transmitted by email to the Center its verification response confirming that Respondent is listed as the registrant and providing the contact details.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified Respondent of the Complaint, and the proceedings commenced on March 16, 2017.  In accordance with the Rules, paragraph 5, the due date for Response was April 5, 2017.  The Response was filed with the Center on April 5, 2017. Complainant submitted an unsolicited supplemental filing on April 10, 2017.

The Center appointed Mark Partridge as the sole panelist in this matter on April 20, 2017.  The Panel finds that it was properly constituted.  The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

page 2

### 4. Factual Background

Complainant is a software company located in New Jersey that specializes in digital marketing for automobile dealers. Complainant provides its services under multiple trademarks, including the ROIQ mark. Complainant has obtained a United States Trademark Registration for the ROIQ mark (Reg. No. 4,648,717) for business and marketing software and services, which was registered on December 2, 2014, with a claimed date of first use of November 2013. Complainant operates a website at "www.dealer.com" and "http://ro.iq", where Complainant advertises and sells its services under the ROIQ trademark.

Respondent is Gurri Kahlon of Plano, Texas. Respondent acquired the disputed domain name <roiq.com> in 2009. The disputed domain name was originally registered on March 30, 1999. Respondent used the disputed domain name to advertise business operation and website development services from 2009 until about March 2016. In March 2016, Respondent revised the website to state "ROiQ is preparing for a re-launch soon. We'll return with an improved CRM and Digital Marketing Platform."

On February 6, 2016, Complainant contacted Respondent indicating an interest in purchasing the disputed domain name. The parties engaged in negotiations relating to the transfer of the disputed domain name over the following weeks, but ultimately the disputed domain name was not transferred.

### 5. Parties' Contentions

#### A. Complainant

Complainant asserts that the disputed domain name is identical to its ROIQ trademark, which Complainant claims to have used since 2007. Complainant contends that Respondent has no rights or legitimate interests in the disputed domain name because Respondent is not commonly known by the domain name, has not been authorized to use the ROIQ trademark, has no connection or affiliation with Complainant, and has never made any *bona fide* use of the disputed domain name. Complainant contends that any use of the disputed domain name by Respondent was not a legitimate use because the services provided were merely token uses and any use was "not sufficient to establish priority in the field of digital marketing analytics." Complaint para. 30.

Complainant asserts that Respondent registered and used the disputed domain name in bad faith, as "evinced by Respondent's use of the domain name to host a website that infringes Complainant's rights." *Id.* at para. 35. Complainant notes that "after leaving the content of roiq.com virtually unchanged for over five years, after learning of Complainant's interest in the domain name, immediately changed the content to purport to demonstrate that Respondent was operating in exactly the same field." *Id.* at para. 36.

#### B. Respondent

Respondent concedes that the disputed domain name is identical to the ROIQ mark, but asserts that he had a legitimate interest in operating the disputed domain name. As early as 2009, Respondent made a *bona fide* attempt to operate a business via the disputed domain name including developing a consumer-facing website and accruing some sales. Respondent claims it did not intentionally attempt to divert consumers from Complainant. Respondent notes his acquisition of the domain name came four years prior to Complainant's first use in commerce, as identified on the United States trademark application.

Respondent denies purchasing or operating the disputed domain name in bad faith, noting it did not register the disputed domain name to disrupt Complainant's business, it did not intentionally attempt to attract for commercial gain Internet users from Complainant's website by creating a likelihood of confusion with Complainant, and it made a *bona fide* attempt to run a profitable business at the disputed domain name.

page 3

### 6. Discussion and Findings

Complainant alleges that it has used the ROIQ mark in interstate commerce since 2007, but provides no factual support for this claim. Instead, it contradicts the claim by submitting the only evidence relating to Complainant's use – the U.S. Registration for the ROIQ trademark – which claims first use in commerce on November 2013. Complainant also presents evidence showing that Respondent used the disputed domain name for a website advertising services from July 5, 2010, to at least the time that he was contacted by Complainant in February 2016. Complainant therefore has failed to show priority of use and undermines that necessary fact with its own evidence. Thus, it appears that Respondent's use of the disputed domain name predates Complainant's use of the ROIQ mark by more than three years.

Complainant argues that Respondent failed to make use sufficient to support unregistered trademark rights, citing the definition of *bona fide* use in 15 U.S.C. 1127 of the Lanham Act. That argument, however, is inapposite to the matters at issue here. The critical question is not whether Respondent has established prior trademark rights, but simply whether Respondent had prior use.

Under paragraph 4(a) of the Policy, a complainant is required to prove each of the following three elements:

(i)  The disputed domain name is identical or confusingly similar to a trade mark or service mark in which Complainant has rights; and

(ii)  Respondent has no rights or legitimate interests in respect of the disputed domain name; and

(iii)  The disputed domain name has been registered and is being used by Respondent in bad faith.

The evidence presented fails to satisfy its burden on the second and third element of Complainant's claim.

### A. Identical or Confusingly Similar

Complainant has rights in the ROIQ trademark as demonstrated by its United States Registration No. 4,648,717, which was registered on December 2, 2014. A trademark registration constitutes *prima facie* evidence of the validity of the mark. *National Construction Rentals, Inc. v. Toilets.com, Inc.*, WIPO Case No. D2009-0147.

Where a disputed domain name includes an identical match to a complainant's mark, a complainant has satisfied the burden of proving that the domain name is identical or confusingly similar under paragraph 4(a)(i) of the Policy. *See, e.g., Veuve Clicquot Ponsardin, Maison Fondée en 1772 v. The Polygenix Group Co.*, WIPO Case No. D2000-0163.

It is a well-established rule that the Top-Level Domain ("TLD") may be disregarded in determining whether a trademark is identical or confusingly similar to a domain name. *See Rohde & Schwarz GmbH & Co. KG v. Pertshire Marketing, Ltd.*, WIPO Case No. D2006-0762; *Gerling Beteiligungs-GmbH (GBG) v. World Space Corp*, WIPO Case No. D2006-0223.

The disputed domain name incorporates Complainant's ROIQ trademark in its entirety. Accordingly, the Panel finds that the disputed domain name is identical to Complainant's ROIQ trademark and that paragraph 4(a)(i) of the Policy is satisfied.

### B. Rights or Legitimate Interests

Under the second element of paragraph 4(a) of the Policy, a complainant is required to present a *prima facie* case that the respondent lacks rights of legitimate interests in the disputed domain name. After the complainant has made a *prima facie* case, the burden of production shifts to the respondent to present evidence demonstrating rights or legitimate interests in the disputed domain name. *See, e.g., Croatia Airlines d.d. v. Modern Empire Internet Ltd.*, WIPO Case No. D2003-0455.

page 4

Paragraph 4(c) of the Policy instructs that rights and legitimate interests can be demonstrated by Respondent if:

"(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue."

Complainant asserts that Respondent has no rights or legitimate interest in the disputed domain name because Respondent is not commonly known by the domain name, has not been authorized to use the ROIQ trademark, has no connection or affiliation Complainant, and has never made any *bona fide* use of the disputed domain name. Respondent rebuts this assertion by presenting evidence that beginning in 2009 it made a *bona fide* attempt to operate a business via the disputed domain name.

The record indicates that Respondent is making use of the disputed domain name for an offering of goods and services in commerce, and this use came before any notice of dispute. Beginning in 2009, Respondent developed a consumer-facing website and began accruing sales. Although Respondent's sales were not substantial, Respondent's use appears to have been legitimate.

Regardless, the Panel must consider whether that use is a *bona fide* use. To conclude otherwise would allow Respondent to rely on intentional infringement to demonstrate a legitimate interest, which would be contrary to the intent of the Policy. *See American Eyewear, Inc. v. Thralow, Inc.*, WIPO Case No. D2001-0991 (denying transfer of <peepers.com> because Respondent had a legitimate interest in the disputed domain name). Here, it does not appear that Respondent adopted the disputed domain name as a deliberate infringement of Complainant's rights. As noted above, Complainant claims use dating to 2007 but provides no evidence of use prior to the date stated in its United States trademark registration. Based on the record, Complainant has failed to show that it had any use of or rights in the ROIQ trademark at the time of Respondent's acquisition of the disputed domain name. No facts have been presented that suggest a deliberate intent to infringe, and accordingly Respondent's use of the disputed domain name was *bona fide*.

The record is sufficient to demonstrate Respondent has used the disputed domain name for a *bona fide* offering of goods and services. Accordingly, Complainant has failed to show that Respondent lacks rights or legitimate interests in the disputed domain name under paragraph 4(a)(ii) of the Policy.

**C. Registered and Used in Bad Faith**

Although Complainant's failure to prove the second element is fatal to its claim, this Panel reviews the third element for completeness. Paragraph 4(b) of the Policy lists circumstances that shall be evidence of registration and use of a domain name in bad faith.

Complainant broadly asserts that "Respondent's bad faith registration and use is evinced by Respondent's use of the domain name to host a website that infringes Complainant's rights," focusing on Respondent's changed use of the disputed domain name in March 2016. Complaint paras. 35-36. Respondent rebuts this by asserting that the disputed domain name was not registered to disrupt Complainant's business and it did not intentionally attempt to attract Internet users to it website by creating a likelihood of confusion with Complainant.

As noted above, the record is devoid of any support for Complainant's contention that it had rights in the ROIQ trademark at the time Respondent acquired the disputed domain name in 2009. "As a general rule,

page 5

when a domain name is registered before any trademark rights are established, the registration of the domain name is not in bad faith since the registrant could not have contemplated the complainant's non-existent right." *MediaSpan Group, Inc. v. Raghavan Rajagopalan*, WIPO Case No. D2005-1282. At the time it acquired the disputed domain name, Respondent was not infringing any rights of Complainant, intentionally or otherwise.

As discussed above, Respondent provided a *bona fide* offering of goods and service through the disputed domain name. Complainant's argument that Respondent's website "infringes Complainant's rights" is not supported by the record and is not a convincing basis on which to find Respondent used the disputed domain name in bad faith. Nor does Respondent's modification of its website evidence registration and use in bad faith. Although Respondent updated the website in March 2016, the character of the website and the services offered by Respondent remained the same. Notably, the modified website stated, "Existing Customers can continue to login to the system using their current credentials," demonstrating continuity from its prior use. Complaint para. 26. The modified website does not reflect an intent to attract, for commercial gain, Internet users to its website by creating a likelihood of confusion with Complainant's mark.

On the balance, this Panel find that Complainant has failed to sufficiently show that Respondent registered and used the disputed domain name in bad faith, and has not satisfied paragraph 4(a)(iii) of the Policy.

**7. Decision**

For the foregoing reasons, the Complaint is denied.

**Mark Partridge**
Sole Panelist
Date: May 4, 2017