UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEALERX, a New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>GURRI KAHLON,<br><br>Defendant. | No. 2:17-cv-1444-MCE-AC<br><br>FINDINGS AND RECOMMENDATIONS |

This matter is before the court on plaintiff's motion for default judgment. ECF No. 13. The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19). This motion was set for hearing on November 1, 2017 at 10:00 a.m. ECF No. 18. Plaintiff appeared telephonically, and defendant did not appear. Id. For the reasons set forth below, the recommends plaintiff's motion be GRANTED, and that judgment be entered in favor of plaintiff.

**I.     Relevant Background**

Plaintiff, DealerX, brought its complaint on July 12, 2017 raising allegations of trademark infringement (15 U.S.C. § 1114(1)), false advertising (15 U.S.C. § 1125(a)), common law trademark infringement, and cyberpiracy. ECF No. 1 at 2. Plaintiff alleges that it owns registered trademark "ROIQ." Id. Plaintiff developed a customer relations management ("CRM") business around the brand ROIQ and, after observing that the "static and undeveloped website" to which "roiq.com" resolved had not been changed or updated over an extended period

1

of time, a DealerX representative contacted the "roiq.com" owner, defendant Kahlon. Id. Plaintiff alleges that defendant elicited specific information about the nature of plaintiff's business and immediately thereafter created a website on the "roiq.com" domain advertising exactly the same services offered by plaintiff. Id. Plaintiff alleges that defendant specifically designed his website to falsely convey the impression that the "roiq.com" site had been previously used for a CRM business. Id.

Plaintiff alleges defendant created a fraudulent webpage on "roiq.com" in order to dramatically increase the asking price for the purchase of the domain, and to harm DealerX, which currently uses a similar domain ("ro.iq") to host its business. Id. Plaintiff initiated an administrative proceeding pursuant to the Uniform Domain-Name Dispute Resolution Policy ("UDRP") on May 4, 2017, in which the panelist appointed found that DealerX had not shown that Kahlon acted in bad faith at the time it registered the "roiq.com" domain.[1] Id. at 3. Plaintiff alleges that prior to the receipt of the UDRP decision, it provided defendant a copy of the complainant in this case and informed defendant of its intent to file suit in federal court.

A summons in this case was issued to defendant on July 12, 2017. ECF No. 2. Defendant did not appear, and plaintiff moved for entry of default on August 21, 2017. ECF No. 10. The clerk entered default on August 22, 2017. ECF No. 13. Plaintiff moved for default judgment on September 30, 2017. Defendant did not respond to the motion for entry of default judgment, and has not otherwise appeared in this case.

## II. Motion

Defendant moves for default judgment on all counts, seeking the following relief:

> A. That Defendant, and all of his agents, servants, employees, and attorneys, and all other persons in active concert or participation with him who receive actual notice of this judgment, be temporarily, preliminarily, and permanently enjoined from, without permission from DEALERX:

---

[1] "Involvement in a UDRP process does not prevent the disputing parties from submitting the dispute to a court of competent jurisdiction before, during or after the dispute resolution process. . . . Most U.S. courts will give no weight to a UDRP panel decision." § 25A:37.ICANN Uniform Dispute Resolution Policy (UDRP)—Judicial review after UDRP decision, 5 McCarthy on Trademarks and Unfair Competition § 25A:37 (5th ed.)

2

>  (1) using ROIQ, any colorable imitations thereof, or any marks confusingly similar thereto, other than non-prominently, in purely informational statements;
>  (2) transferring to anyone other than to DEALERX the domain name roiq.com or any other domain name that uses names, words, designations, or other symbols confusingly similar to ROIQ;
>  (3) registering, maintaining registrations for, using, offering for sale, claiming ownership of, or in any other way using roiq.com, or any other domain name that uses names, words, designations, or other symbols confusingly similar to ROIQ; and
>  (4) otherwise deceptively or unfairly competing with DealerX;
>
> B. That Defendant be DIRECTED pursuant to 15 U.S.C. 1125(d)(2)(D)(i) to transfer registration of the domain name roiq.com to DEALERX within three days;
>
> C. That DEALERX be awarded statutory damages in the amount equivalent to its attorney's fees pursuant to 15 U.S.C. § 1117(a), or, alternatively, pursuant to 15 U.S.C. §1117(c)(1) or 15 U.S.C. § 1117(d); and
>
> D. That DEALERX be awarded such other and further relief as the Court may deem just and proper.

ECF No. 13 at 2-3. Defendant has not appeared or filed any response.

### III. Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

>  (1)  the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6)

> whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim."). A party's default conclusively establishes that party's liability, although it does not establish the amount of damages. Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

    B. The Eitel Factors

        1. Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Here, plaintiff would suffer prejudice if the court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first Eitel factor favors the entry of default judgment.

4

2.  Factors Two and Three: Merits of Claims and Sufficiency of Complaint

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries. The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F.Supp.2d at 1175. Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment.

Plaintiff brings four causes of action: (1) trademark infringement (15 U.S.C. § 1114(1)), (2) false advertising (15 U.S.C. § 1125(a)), (3) common law trademark infringement, and (4) cyberpiracy (15 U.S.C. § 1117(d)). Although plaintiff has alleged four distinct claims, "the essential elements of the federal claims [with the exception of plaintiff's cyberpiracy claim] are identical and if met with adequate evidence are sufficient to establish liability under the state law claim as well." Phillip Morris USA Inc. v. Shalabi, 352 F.Supp.2d 1067, 1072 (C.D. Cal. 2004) (citing Brookfield Communications, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)).

        a.  Trademark infringement

To state a claim for trademark infringement, the complaint must allege that the plaintiff: "(1) ...has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [plaintiff's] rights to the mark." Department of Parks and Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006); see also Multi Time Machine, Inc. v. Amazon.com, Inc., 804 F.3d 930, 935 (9th Cir. 2015) ("To prevail on a claim of trademark infringement under the Lanham Act, a trademark holder must show that the defendant's use of its trademark is likely to cause confusion, or to cause mistake, or to deceive."). "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). In evaluating the likelihood of confusion, the court employs an eight factor test. See AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prod., 353 F.3d 792,

810 n.19 (9th Cir. 2003).

Here, plaintiff has made the requisite allegation of protectable ownership in its complaint and supported the allegation with sufficient evidence. ECF No. 1 at ¶¶ 28-33. Plaintiff submitted a copy of its federal registration for "ROIQ" with its motion for summary judgment. ECF No. 14 ("Tognetti Decl.") at Exhibit A. Plaintiff submitted testimony that the "ROIQ" mark is and has been used in connection with a CRM and digital marketing business. Tognetti Decl. at ¶¶ 1-3. Plaintiff also successfully addresses each factor of the Sleekcraft test for likelihood of confusion: (i) strength of the mark; (ii) proximity of the goods; (iii) similarity of the marks; (iv) evidence of actual confusion; (v) marketing channels used; (vi) type of goods and degree of care likely to be exercised by the purchaser; (vii) defendant's intent in selecting the mark; and (viii) likelihood of expansion of the product lines. See Sleekcraft, 599 F.3d at 348-49. The court now addresses these factors in turn.

### *(i)    Strength of the mark*

A "strong," or distinctive, mark is afforded greater protection under trademark law than a mark that is not strong. See, e.g., Sutter Home Winery, Inc. v. Madrona Vineyards, L.P., No. C 05-0587 MHP, 2005 WL 701599, *8 (N.D. Cal. Mar. 23, 2005) ("The strength of protection afforded to a trademark is proportionate to the likelihood that the public will remember the mark and associate it with the source of the trademarked goods" (citations omitted)). When evaluating the strength of a mark, courts consider both conceptual and commercial strength. Id.

The conceptual strength of a mark "is determined by its placement on a continuum of marks from 'generic,' afforded no protection; through 'descriptive' or 'suggestive,' given moderate protection; to 'arbitrary' or 'fanciful' awarded maximum protection." E. & J. Gallo Winery, 967 F.2d at 1291 (quoting Nutri/System, Inc. v. Con-Stan Industries, Inc., 809 F.2d 601, 605 (9th Cir. 1987) (quotation marks omitted)). The nature of a mark is determined by the "imagination test" and a "need test." Id. (citing Earthquake Sound Corp. v. Bumper Industries, 352 F.3d 1210, 1221 n. 4 (9th Cir. 2003)). Using the "imagination test" the court asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies, and using the "need test" the court examines the extent to which competitors need a

mark to identify their goods or services. Earthquake Sound Corp., 352 F.3d at 1221 n. 4 (quoting Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988)).

Applying these tests, the court finds that the ROIQ mark is best classified as a "suggestive" mark. ROIQ is a mark that combines the abbreviations "ROI" and "IQ," with "I" simultaneously standing for both "investment" in "return on investment" and "intelligence" in "intelligence quotient." ECF No. 13 at 15. The mark "ROIQ," while consisting of an amalgamation of abbreviations, nonetheless "suggests, rather than describes, an ingredient, quality or characteristic" of the product by indicating that the company assists in providing customers "intelligence" to ensure the best "return on investment." Nutri/Sys., Inc., 809 F.2d at 605. Thus, the ROIQ mark is entitled to moderate protection. E. & J. Gallo Winery, 967 F.2d at 1291.

Finally, taking plaintiff's allegations as true, the ROIQ mark has commercial strength. According to plaintiff, the ROIQ business has gained a significant share of its market. Tognetti Decl. ¶ 3. Because the "ROIQ" mark is entitled to moderate rather than maximum protection, but nonetheless has commercial strength, this factor weighs slightly in favor of finding a likelihood of confusion.

*(ii) Proximity of the goods*

While defendant is apparently not actually selling any goods, he is marketing a product that is identical to plaintiff's product. Tognetti Decl. at 4. "Where goods are related or complementary, the danger of consumer confusion is heightened." E.&J. Gallo Winery, 967 at 1291. That defendant does not actually sell or provide the services advertised on roiq.com is immaterial, as "merely advertising an infringing mark itself is an act of infringement, apart from any manufacturing or sale." See MCCARTHY § 25:26; Levi Strauss & Co. v. Shilon, 121 F.3d 1309, 1313 (9th Cir. 1997) ("An offer to sell without more will suffice to establish liability."). Plaintiff submitted a screenshot of defendant's website, demonstrating defendant's use of the name "ROiQ" and defendant's statement that "ROiQ" is preparing to "re-launch" an improved CRM and digital marketing platform. Tognetti Decl. at Exhibit D. Plaintiff has submitted testimony that the business defendant is purporting to offer under the "ROiQ" name is the same

7

as the type of business plaintiff offers under their "ROIQ" trademark. Tognetti Decl. at ¶ 13. This factor weighs strongly in favor of finding a likelihood of confusion.

    *(iii)* *Similarity of the marks*

  The "similarity of the marks" portion of the Sleekcraft test "is the most crucial factor in determining the likelihood of confusion." Sutter Home Winery, Inc., 2005 WL 701599 at *5. Here, plaintiff's mark ("ROIQ") is essentially identical to defendant's infringing use ("roiq.com"). This factor weighs strongly in favor of finding a likelihood of confusion.

    *(iv)* *Evidence of actual confusion*

  While evidence of actual confusion is not necessary to prevail on an infringement claim or to secure injunctive relief, it can provide persuasive evidence that future confusion is likely. See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991). Plaintiff submitted testimony of actual consumer confusion. ECF No. 16. This factor weighs in favor of finding a likelihood of confusion.

    *(v)* *Marketing channels used*

  An analysis of marketing channels accounts for overlapping advertising streams. Because both plaintiff and defendant advertise and apparently conduct their business largely online, there is significant marketing channel overlap in this case. "In the Internet context, in particular, entering a web site takes little effort—usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1057 (9th Cir. 1999). This factor weighs in favor of finding a likelihood of confusion.

    *(vi)* *Type of goods and degree of care likely to be exercised by the purchase*

  The fact that this dispute centers on the name of a website increases the likelihood of confusion. "Navigating amongst web sites involves practically no effort whatsoever, and arguments that Web users exercise a great deal of care . . . are unconvincing." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209 (9th Cir. 2000). This factor weighs in favor of finding a likelihood of confusion.

### (vii) Defendant's intent in selecting the mark

Although plaintiff demonstrated that defendant intentionally altered his website to mirror plaintiff's business and create a conflict, plaintiff has not demonstrated that defendant was aware of plaintiff's business when he actually selected the mark. This factor weighs against finding a likelihood of confusion.

### (viii) Likelihood of expansion of product lines

This factor evaluates whether a parties' product line is likely to expand to create competition; where the parties are already in direct competition with one another, this factor is not relevant. See, e.g., Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc., 457 F.3d 1062, 1078 n. 12 (9th Cir. 2006) ("The final factor, '[a] likelihood of expansion in product lines,' warrants no discussion as it is 'relatively unimportant where two companies already compete to a significant extent,' " quoting Brookfield Communications, 174 F.3d at 1060).

Based on a review of the entire record, plaintiff has demonstrated protectable ownership in the ROIQ mark and a likelihood of confusion stemming from defendant's unauthorized use. Accordingly, the second and third Eitel factors are satisfied as to the claims related to trademarl infringement.

### b. Cyberpiracy

To prevail on a claim for cyberpiracy, plaintiff must prove that "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acts with 'bad faith intent to profit from that mark.'" DSPT Int'l, Inc. v. Nahum, 624 F.3d 1213, 1218–19 (9th Cir.2010) (quoting 15 U.S.C. § 1125(d)(1)(A)). As discussed above, plaintiff has alleged and produced evidence that defendant's domain name is identical to a protected mark owned by the plaintiff.

The issue of "bad faith" is slightly more complex. While the court notes that it does not have to credit the findings of the UDRP decision[2], the undersigned is in agreement that the facts

---

[2] See 5 McCarthy on Trademarks and Unfair Competition § 25A:37 (5th ed.)

do not support a finding of bad faith in relation to defendant's initial acquisition of the "roiq" domain name. However, defendant did demonstrate bad faith upon learning of plaintiff's mark and attempting to improperly extract profit from plaintiff. Plaintiff has demonstrated defendant's bad faith attempt to profit by submission of an e-mail chain between plaintiff and defendant showing defendant attempting to extract a high price from the plaintiff for purchase of the domain name. Tognetti Decl. at Exhibit C. Defendant further demonstrated bad faith by asserting that he tried to create consumer confusion by placing content on the website associated with his infringing domain that mirrored plaintiff's business model. Tognetti Decl. at ¶12-14. Defendant's actions after being made aware of his infringement are relevant to the bad faith analysis. In Sleekcraft Boats, the Ninth Circuit found no bad faith where the defendant had adopted the infringing mark unwittingly *and,* after notification, "designed a distinctive logo" to prevent consumer confusion. 599 F.2d at 354. The defendant in this case did the opposite. According to the complaint, upon learning of his infringement defendant amplified the infringement in an attempt to essentially extort money from the plaintiff. Taking plaintiff's allegations as true, defendant's behavior following notification of infringement demonstrates bad faith. The merits of this claim favor entry of default judgment.

   3. Factor Four: The Sum of Money at Stake in the Action

  Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct. Courts have held that where a plaintiff seeks only injunctive relief from the continued use of their trademarks, this factor favors entry of default judgment. PepsiCo, Inc., 238 F. Supp. 2d at 1176–77. Here, plaintiff seeks attorney's fees (or, in the alternative, equivalent statutory damages) and injunctive relief. The amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

   4. Factor Five: Possibility of Dispute Concerning Material Facts

  The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to

damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served the defendant with the summons and complaint. ECF Nos. 1 and 2. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. ECF No. 13 at 30. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant failed to defend himself in this action. Thus, the record supports a conclusion that the defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

### 7. Conclusion: Propriety of Default Judgment

Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against defendant. What remains is the determination of the amount of damages to which plaintiff is entitled.

C. Terms of Judgment

Plaintiff's motion for default judgment includes a request for a permanent injunction enjoining defendant from using the "ROIQ" mark, including the "roiq.com" domain name. ECF No. 13 at 28. 15 U.S.C. § 1116(a) provides that a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." A permanent junction may be granted where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

"Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). Moreover, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 612 n.3 (9th Cir. 1989). And "the public has an interest in the enforcement of federal statutes." CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008). In light of the fact that there is no hardship to the defendant in enjoining defendant from using an identical mark to plaintiff's registered mark, the court recommends that plaintiff be awarded a permanent injunction.

Plaintiff's motion also seeks transfer of the roiq.com domain name within three days. ECF No. 13 at 28. For the same reasons supporting plaintiff's request for injunctive relief, including defendant's bad faith, transfer of the infringing domain name is warranted. See Facebook, Inc. v. Banana Ads LLC, No. CV 11-03619-YGR KAW, 2013 WL 1873289, at *20 (N.D. Cal. Apr. 30, 2013), 15 U.S.C. § 1125(d)(i)(C). The court recommends that defendant be ordered to transfer the "roiq.com" domain name to plaintiff within three days of judgment.

1 | Finally, plaintiff's motion for default judgment also seeks an award of attorney's fees and costs, or alternatively, statutory damages in an amount equivalent to plaintiff's attorneys fees pursuant to 15 U.S.C. § 1117(c)(1) or 15 U.S.C. § 1117(d). ECF No. 13 at 29. "An award of reasonable attorneys' fees and costs is expressly provided for in 'exceptional cases' of trademark infringement." Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008) (quoting 15 U.S.C. § 1117(a)). The term "exceptional cases" is generally accepted to mean cases in which trademark infringement is "deliberate and willful." See Lindy Pen Co. v. Bic Pen Corp., 982 F.2d 1400, 1409 (9th Cir. 1993) (interpreting the term "exceptional" to apply when "the infringement is malicious, fraudulent, deliberate, or willful."). An entitlement to reasonable attorney's fees may be found where the complaint alleges that the defendants conduct was willful and the defendant's default has been entered. See Derek, 528 F.3d at 702 ("Thus, all factual allegations in the complaint are deemed true, including the allegation of Poof's willful infringement of Andrew's trademarks. This default sufficiently establishes Andrew's entitlement to attorneys' fees under the Lanham Act.").

As noted above, however, the award of attorney's fees must be reasonable. See Intel Corp. v. Terabyte Intern., Inc., 6 F.3d 614, 622 (9th Cir. 1993) ("the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate"). In this regard, Local Rule 293 requires a party seeking an award of attorney's fees to submit an affidavit addressing certain criteria that the court will consider in determining whether an award of attorney's fees is appropriate.

Plaintiff has submitted an acceptable affidavit indicating that it accrued attorney's fees in the amount of $23,650 and costs in the amount of $455.40. ECF No. 19. Counsel's billing rate of $320 per hour is an acceptable billing rate for the Sacramento region. Id. at ¶ 7. The court finds that the costs and fees are reasonable in light of the complexity of the type of litigation, the need for local counsel, and the credentials of the attorneys involved. ECF No. 19. An award of the reasonable requested attorney's fees and costs is appropriate.

////

////

## IV. Conclusion

It should be RECOMMENDED THAT:

1. Plaintiff's August 21, 2015 motion for default judgment, (ECF No. 13) be granted;

2. The court enter judgment against the defendant on the complaint's claims of trademark infringement (15 U.S.C. § 1114(1)), false advertising (15 U.S.C. § 1125(a)), common law trademark infringement, and cyberpiracy (15 U.S.C. § 1117(d));

3. The court enjoin defendant, and all persons acting by, through, or in concert with the defendant, from using plaintiff's trademarks in any manner;

4. The court order defendant to transfer the "roiq.com" domain name to plaintiff within three days of judgment;

5. The court grant plaintiff's request for attorney's fees in the amount of $23,650 and costs in the amount of $455.40; and

6. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: November 22, 2017

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE